THE SHIP HOWARD, HER TACKLE, &c., WILLIAM F. SCHMIDT AND GEORGE BELCHER, CLAIMANTS AND APPELLANTS, *v.* FREDERICK WISSMAN, LIBELLANT.

Where a cargo of potatoes was shipped at Hamburg to be delivered at New York, the evidence shows that they were in bad condition when shipped, and consequently the vessel is not responsible for their loss.

THIS was an appeal from the circuit court of the United States, for the southern district of New York.

The facts are stated in the opinion of the court.

The case was argued by *Mr. Johnson*, for the appellants, upon which side there was also a brief filed by *Mr. Donohue*, and by *Mr. Betts*, for the appellees, upon which side there was also a brief filed by *Mr. Cutting*.

The points of law upon both sides were so connected with the testimony that they could not be explained without giving an abstract of the evidence.

Mr. Justice CATRON delivered the opinion of the court.

This is a proceeding *in rem*, against a foreign vessel, by libel; charging that the libellant shipped on her, at Hamburg, in Germany, 5,004 bushels of potatoes in good order and well conditioned for the purpose of shipping, and that, by the long and wilful delay of the vessel at Hamburg, and on her voyage to New York, (the port of destination,) and through the carelessness and misconduct of the master and owner, the potatoes became and were injured, decayed, and wholly lost to the libellant.

To this charge the respondents answer, that the decay of the potatoes was caused by their lying in port for some time before they were put on board; and that they were delivered to the vessel in a damp and wet state, and were not in a sound condition. The alleged negligence is denied generally.

On the foregoing issue the district court made an interlocutory decree, declaring that "the libellant recover in this action against the ship, the value of the potatoes at Hamburg at the time they were laden on board, together with charges and expenses, unless it be proved by the claimants that they were not then in a good, sound condition; or that they perished afterwards, in consequence of inherent disease or defects existing at the time of lading the same, and not from the prolonged detention in their transportation; and it is further ordered, that it be referred to a commissioner to ascertain and report the cause of the destruction and loss of the potatoes, and their value at the time of shipment."

The commissioner reported that he had heard the parties and their testimony, and found that the potatoes were in a sound condition, and that they did not perish afterwards in consequence of inherent disease or defects existing at the time of loading the same, but that the cause of their destruction and loss was the long and protracted voyage of one hundred and nine days; and that they were worth, when shipped, (including charges,) $2,256.$\frac{77}{100}$.

This report was adopted by the district court, and a decree made accordingly.

An appeal was prosecuted by the claimants to the circuit court, where the decree below was affirmed.

The potatoes were shipped in bulk in the hold of the vessel, which mode of shipment was adopted at the instance of the libellants' agent, who superintended their stowage.

It appears that much rain fell during the time the potatoes were lying in lighters, awaiting an opportunity to ship them, being about a month; and it rained when they were alongside, and putting into the vessel; and in our opinion it is satisfactorily established, that the potatoes were wet to a considerable extent when delivered and stowed in the hold. Wulff, the stevedore, under whose immediate supervision they were stowed, deposes that they were wet, "and considering their condition, and their being shipped in bulk, he thinks they should not have been shipped across the Atlantic; for said potatoes began to steam before the sailing of the ship Howard."

The pilot of The Howard deposes, that he saw them steam out of the fore-hatch, during the passage down the river, before the vessel got outside.

Kumpel deposes, that he saw the potatoes in the lighters and on board, and that they were wet. So the other witnesses prove.

Kundsten, mate of The Howard, deposes that the potatoes began to have a bad smell when the vessel was fourteen days out. The captain says he smelt them when they were only eight days at sea.

It is proved by all the witnesses of both sides, that the potato crop of 1849 was much blighted and diseased, all over Germany; and several witnesses declare, that potatoes grown that year were generally unfit for shipment across the ocean.

The libellants' witness, Heidpriein, answers to cross interrogatories, that he purchased and sold that year 7,200,000 pounds of potatoes; that the crop was generally unsound, and would not stand being shipped in bulk for so long a voyage as from Hamburg to New York; says he shipped to Hamburg—about forty German miles, (160 of ours)—by water, and that no cargo arrived, after being on the way from four to fourteen days, with

out the potatoes being in a bad condition. And respecting those shipped on The Howard, he states that Mr. Rawalle, Mr. Wissman's agent, applied to him to purchase potatoes; and he, having none to sell, told Mr. Rawalle of some for sale by Lehman and Cleve—which, not being sound, the deponent had refused to buy—and he understood Rawalle purchased them. Rawalle deposes that he got the potatoes he shipped of Deven and Lehman, but declares they were not sick or diseased.

Baalmann deposes that he saw the potatoes in the lighters; they were in a bad condition and diseased, he having made examination by cutting them with a knife, and found they were not in good shipping order; and he knows that potatoes of that year's growth, shipped in bulk to England, arrived there in a worthless state, and had to be thrown overboard.

Wulff, the stevedore, says, that when he stowed the potatoes he examined them, by breaking and cutting; they appeared to be unsound and diseased.

The master of The Howard deposes, that the ship Miles took a cargo of the potatoes purchased by Rawalle for Wissman, and what The Miles did not take were taken by The Howard; that he, the master, purchased some of the potatoes that were going to The Miles, for use on The Howard, which proved to be diseased and unfit for use on being cooked.

The mate declares that the potatoes looked well outside, but when cut open they had sickness in them; that the potatoes loaded on both vessels came from the same man.

Arianson, master of the bark Miles, deposes, that more potatoes were sent to The Miles, when loading at Hamburg, than he could take on board, and that the balance were sent to The Howard; that the potatoes that he brought rotted. He discovered it five or six weeks after going to sea, by the smell, which was two or three weeks before arriving at New York.

The owner having been committed to the *primâ facie* facts of soundness and good condition by his contract of affreightment, it was properly imposed on him by the district court to establish the contrary by due proof; and our opinion is, that the proof produced by him does overcome the *primâ facie* presumption, and shows the potatoes of the libellant to have been unsound and unfit for shipment, and especially unfit to be shipped in bulk and wet, as was done by the libellant's agent.

Rawalle was examined for the libellant several times. He deposes, that the potatoes were put on board in good order: that they were dry and sound; and in his opinion, if The Howard had sailed in due time, according to her advertisement, they would have arrived at New York in a sound condition.

As a dealer in this article, the witness had very small ex-

perience compared with various others examined; none of whom express the belief that this cargo, stowed in bulk, could have reached the port of destination uninjured. But what appears to us far more satisfactory than the speculations of witnesses is, that the cargo of The Miles was lost by decay, she being loaded at the same time and in the same manner as was The Howard, and with part of the potatoes taken from the same lighters—although The Miles made her voyage in due time.

Our conclusion is, that the libellant's case has no merits. It is therefore ordered, that the decree of the circuit court be reversed, and the cause remanded to that court, with directions to dismiss the libel with costs.

Mr. Justice DANIEL.

In the opinion just pronounced, so far as it goes to demonstrate the entire want of justice in the demand of the libellant, I entirely concur, the testimony in this case having satisfactorily ascertained that the loss of the cargo was inevitable from the character of the subject of which that cargo consisted, and, that by no degree of diligence or care could it have been transported in good condition to its point of destination. But, independently of these considerations, and in advance of them, there is another which of itself, in my judgment, should have prevented the claim of the libellant from being established or entertained at all in the district and circuit courts, and which should operate with equal effect in preventing its being entertained here.

This case is one of contract between the owner of property and the master of a vessel to transport a cargo of potatoes from Hamburg and to deliver them in New York. It is nothing more than a contract between the owner of property and a carrier to convey a given subject for hire. It was a contract made upon land to be terminated and executed upon the land for a stipulated compensation, and not strictly or properly a maritime contract, in any sense beyond any other contract, in the performance of which a party or agent would be compellable to cross the ocean or even to pass a river. It did not begin and terminate on the sea. Upon this contract an action might have been instituted in a court of law either upon the charterparty or the bill of lading, in conformity with ancient and well-settled practice, and could have been as speedily and efficiently decided in such a court as it could be in the present form of proceeding, less familiar to the common understanding and habits of the country, dubious and undefined in its claims to power, and attended with expenses beyond those incident to the usual tribunals of the land.

My opinion is, that for want of jurisdiction in the case pre-sented upon the face of the libel, that libel should have been dismissed by the circuit court, and that this court should now, for that cause, order it to be dismissed.