## Case No. 90.

### The ADRIATIC.

[16 Blatchf. 424;[1] 8 Reporter, 231.]

Circuit Court, S. D. New York. June 23, 1879.

CARRIERS—LIABILITY FOR LOSS AND INJURY— EVIDENCE.

A bill of lading for coir yarn in bales, shipped by a steamer from Liverpool to New York, re-ceipted for the bales as "in good order and well conditioned," and described them as "in transit" from another steamer. They were, apparently, in good external order. The voyage was ten days. The bales, when discharged, appeared to have been, at some time, wet with sea water. The yarn inside was damp to the touch, discolored, and unfit for use to make fine goods. The bales were properly stowed, and nothing appeared as to how they could have been damaged on the steamer. There was no evidence as to the condition of the bales when shipped. On a libel, in admiralty, against the steamer, to recover for the damage: Held, that the libellant could not recover, because he had not shown that the goods were damaged while on board of the steamer.

[See note at end of case.]

In admiralty. This was an appeal by the libellants from a decree of the district court, in a suit in rem, in admiralty, dismissing the libel. The following facts were found by this court: "On the 20th of October, 1875, two hundred and fifty bales of coir yarn

[1][Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]
1FED.CAS.—13

were shipped on the steamship Adriatic, consigned to the libellants, in New York. Coir yarn is the fibre of the cocoanut husk, made into strands of yarn, and put up in hanks. The hanks are put in bales, compressed, covered with burlap wrappers, and wound around with iron hoops from end to end. Coir yarn is used for making mats. The bill of lading signed by the agent of the ship at Liverpool, receipted for the bales, in the usual form, as 'shipped in good order and well conditioned.' The goods were described as 'two hundred and fifty bales coir yarn, in transit from steamer Macedonia,' and were to be delivered 'in like good order and well conditioned.' The bill of lading also contained this clause: 'Weight, contents, quality, condition, quantity and value unknown, and ship owner not accountable for the same.' At the time of the shipment, the bales were, apparently, in good external order and condition. The ship sailed from Liverpool October 20th, and arrived in New York October 30th, making her voyage in about ten days. When the bales were landed in New York, one hundred were found to have been wet at some time with sea water. The wrappers were somewhat stained and discolored, and the hoops rusty. On cutting the wrappers and examining the yarn, it was found to be damp. It was not wet enough to drip, but the dampness was perceptible to the touch. It was, to some extent, discolored and unfit for the manufacture of fine goods, to which it was, on account of its quality, originally adapted. The bales were landed upon a dry and covered dock. The bales were all well and properly stowed in the lower hold of the ship. No other goods came out of the vessel wet. There was no appearance of a leak, and the hatches were all in good order and well secured, so as to be impervious to sea water, when the ship arrived. There was no evidence as to the condition of the bales when shipped, other than that which was contained in the bill of lading. It was not shown how long they had been 'in transit' when the shipment was made. Neither was it shown from what place the original consignment was made, nor whether the bales had been specially exposed to sea water, either while on the voyage from Liverpool to New York, or before. There was nothing in the appearance of the yarn to indicate that the wetting might not have occurred before the delivery to the Adriatic."

Francis Howland, for libellants.
C. E. Souther, for claimant.

WAITE, Circuit Justice. The receipt in the bill of lading is an admission that the goods were, when received, in apparent good order, but it is not conclusive as to their actual condition. It makes a prima facie case against the ship, and gives the libellants

a right to recover, unless this case is overcome by the evidence. The burden of the admission rests upon the ship, until it is shown that the condition and appearance of the goods at the time of their discharge are consistent with the actual existence, in the packages, of the cause of the damage when the shipment was made, without discovery by the ship's agents, acting in good faith, and with ordinary care, while taking the cargo on board. There is, here, no question of estoppel. The bill of lading has not been assigned, and it does not appear that any advances have been made on the faith of it. The parties and their rights are precisely the same as they were when the receipt was signed. The evidence is, as I think, sufficient to shift the burden of proof from the ship to the libellants. The goods were received while "in transit," and from another ship. They might have been exposed to sea water while on their way to Liverpool, and still the damage such as not necessarily to attract attention as the transfer was made from ship to ship. It was only about ten days from the time of the shipment in Liverpool to the discharge in New York. When the bales were discharged, there was no appearance of recent exposure. The wrappers were discolored and the yarn was damp. No water dripped from any of the packages, and no attempt seems to have been made to ascertain whether any could be brought out by pressure. Certainly, it is to be presumed that such an attempt would have been made, if the indications were such as to make it reasonable. No other goods were wet, and there was no appearance of any leak in the ship. There was no water to be seen in the hold where the goods were stowed, and none of the other cargo appears to have been damp, even. Under these circumstances, it seems to me clear, that the libellants, before they can recover, must prove that their yarn was actually free from wet or dampness when it went on board. The damaged appearance of the yarn when it came out, is a circumstance to be taken into consideration in their favor, but it is not, of itself, sufficient, in my opinion, to overcome the effect of the other facts, which are clearly established by the evidence. The judgment of the district court was right, and a decree may be prepared, dismissing the libel.

[NOTE. In a suit against a common carrier, the libellant makes a prima facie case by producing the receipt of the carrier: "Received in good order." But these words do not constitute an agreement; they are a mere admission, and may be explained or contradicted by the carrier. The Pacific, Case No. 12,644; The Howard, 59 U. S. (18 How.) 231. In case of loss, the presumption of law is that it was occasioned by the act or default of the carrier; and the burden of proof is upon him to show that it arose from a cause existing before his receipt of the goods, and for which he is not responsible. Nelson v. Woodruff, 1 Black, (66 U. S.) 156.]