JANNEY and others *v.* THE TUDOR COMPANY.

*(District Court, D. Massachusetts.* ———, 1880.)

1 NEGLIGENCE—SHRINKAGE OF CUTCH—STOWAGE AND HOISTING.—2,502 bags of cutch were received on board a vessel at Calcutta, during the months of January and February, for shipment to Boston, and bills of lading were delivered for the same, containing the usual exception of the perils of the sea, and the memorandum, "weights and contents unknown." The cutch, when received, had become somewhat softened by a voyage, from Singapore, of 1,500 miles, and was therefore rebagged at Calcutta. It was stowed in the customary manner on the bottom of the ship's hold, but piled in tiers somewhat higher than usual. The ship sailed from Calcutta in March, and reached Boston in July. Every precaution was taken during the voyage to diminish the heat of the hold by ventilation, and, upon reaching Boston, the bags were hoisted out of the hold and delivered on the wharf, in the usual manner, by means of slings. *Held,* under the circumstances of the case, that a shrinkage of about 5 per cent. of the weight of the cutch was owing to the inherent nature and quality of the article itself, and not to any negligence of the owners of the ship.

*John C. Dodge & Sons,* proctors for libellants.

*Dana & Harding,* for respondents.

NELSON, D. J. This is a libel *in personam,* against the owners of the ship Iceberg, to recover for loss and damage of 2,502 bags of cutch, on a voyage from Calcutta to Boston. It appeared at the hearing that the cutch was received on board the Iceberg at Calcutta, in the months of January and February, 1878, in good order and condition, and bills of lading were delivered for the same, containing the usual exception of the perils of the sea, and the memorandum, "weights and contents unknown."

The ship sailed from Calcutta early in March, and arrived in Boston in the following July. In the course of the voyage, in consequence of the heat of the lower hold, where it was stowed, the cutch had softened, had leaked out of the bags, and run together, and had become mingled with the fragments of the bags and the dunnage, and had suffered a shrinkage of about 5 per cent. of its weight as received at Calcutta. In addition to the loss of weight, the libellants

were obliged to incur expense in rebagging the cutch. The libellants, in their libel, admit "that it is true that cargoes of cutch are liable to suffer, and usually do suffer, by their own nature, a certain loss of weight and shrinkage during the voyage from Calcutta to Boston, made at the time of year that this voyage was made," but they aver that "an extreme allowance for such loss of weight upon the voyage, supposing the cutch to have been properly received, stowed, transported, and delivered by said vessel, would have been 3 per cent. of the quantity received." They claim that the excess of the shrinkage in this case, above 3 per cent., was caused in part by bad stowage, and in part by unusual and improper means used in hoisting out the cutch from the hold and landing it on the wharf. Assuming that a shrinkage of 5 per cent. in weight is an excessive and extraordinary shrinkage in a cargo of cutch, on a voyage in the hot months, from Calcutta to Boston, which is by no means clear upon the evidence, I am unable to come to the conclusion that the shrinkage in this case was owing to defective stowage. It was stowed in the customary manner, on the bottom of the ship's hold. There was some evidence that the bags were piled in tiers, somewhat higher than is usual. But it was not shown that any practice existed in this respect which amounted to a custom, and I cannot find upon the evidence that this circumstance contributed, in any appreciable degree, to the shrinkage.

It appears that, owing to the inherent character and quality of the article itself, cutch always suffers a greater or less loss from evaporation on a voyage from Calcutta, depending upon the condition it is in when received, and the temperature of the weather during the voyage, and that it is liable to soften and run through the meshes of the bags, when exposed to a temperature which is inevitable in the hold of a vessel on a voyage of several months in hot weather. When this cutch was received on board the Iceberg, at Calcutta, it had become somewhat softened from a voyage of 1,500 miles, from Singapore, and was rebagged at Calcutta in consequence.

The voyage from Calcutta to Boston was during the hot months in both hemispheres. Every precaution was taken on the passage to diminish the heat of the hold by ventilation. The cutch was hoisted out of the hold and delivered on the wharf in the usual manner, by means of slings, and I can see no negligence on the part of the respondents in that respect.

Upon the whole case, I am of the opinion that the shrinkage caused by the evaporation and melting of the cutch was owing to the inherent nature and quality of the article itself, and not to any negligence of the respondents. The authorities are numerous and conclusive that the ship owner is not responsible for loss to goods arising under such circumstances, whether in his relation as common carrier, or upon bills of lading in the form given in this case. *Nelson* v. *Woodruff*, 1 Black, 156; *Brig Colcaberg*, 1 Black, 170; *Clark* v. *Barnwell*, 12 How. 272; *Lamb* v. *Parkman*, 1 Sprague, 343; *The Invincible*, 1 Low. 225; *Libby* v. *Gage*, 14 Allen, 261.

Libel dismissed, with costs.