[No. 4548.   Decided January 30, 1904.]

L. H. Griffith, *Appellant,* v. Seattle Consolidated Street Railway Company *et al., Respondents.*[1]

Limitations of Actions—Relief on the Ground of Fraud—Discovery of Fraud—Complaint—Sufficiency.    An action by the holder of part of the bonds of a street railway corporation, seeking an accounting for certain property alleged to have been fraudulently abandoned to foreclosure sale, under a fraudulent reorganization scheme arranged by the defendant companies and their mortgagees, and the other bondholders, whereby the plaintiff, who was absent in Central America, was to be excluded from such reorganization by effecting the same before he could have actual knowledge thereof, is barred by the statute of limitations when it is not commenced until more than three years after the decree of foreclosure whereby the property passed into other hands, where the plaintiff admits actual knowledge of the foreclosure decree; and the allegation that he did not have knowledge of the reorganization scheme or of the fraudulent plan to exclude him therefrom and that the same were not discovered within the said statutory period, will not evade the effect of the averments showing actual notice of the real fraud, which consisted in abandoning the defenses and confessing the decree of foreclosure; since the plaintiff is not seeking participation in the reorganization, but an accounting in property sold to his prejudice, and to his knowledge for more than the statutory period.

Appeal from a judgment of the superior court for King county, Tallman, J., entered July 1, 1902, upon sustaining a demurrer to a complaint, dismissing an action for relief upon the ground of fraud. Affirmed.

1Reported in 79 Pac. 314.

*Sachs & Hale* and *Bausman & Kelleher,* for appellant. cited: *Jackson v. Ludeling,* 21 Wall. 616; *Hackettstown Nat. Bank v. Yuengling Brewing Co.,* 74 Fed. 110; *Sahlgard v. Kennedy,* 2 Fed. 295; *Ervin v. Oregon etc. R. Co.,* 27 Fed. 625; *Meeker v. Winthhrop Iron Co.,* 17 Fed. 48; *Barr v. New York etc. R. Co.,* 96 N. Y. 444; *Rogers v. Nashville etc. R. Co.,* 91 Fed. 299; *Gamble v. Queens County Water Co.,* 123 N. Y. 91, 25 N. E. 201, 9 L. R. A. 527; *Miner v. Belle Isle Ice Co.,* 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412; *Brewer v. Boston Theatre,* 104 Mass. 378; *Rothchild v. Memphis etc. R. Co.,* 113 Fed. 476; *Farmers' Loan etc. Co. v. New York etc. Co.,* 150 N. Y. 410, 44 N. E. 1043, 55 Am. St. 689, 34 L. R. A. 76.

*Piles, Donworth & Howe (Thomas R. Shepard,* of counsel), for respondents.

HADLEY, J.—By this action the appellant seeks relief from acts connected with what he alleges was as to him a fraudulent corporate reorganization scheme. His fourth amended complaint, upon which he stands, is now before us for review upon demurrer. The complaint is very long and avers many details. We shall endeavor to state, in as condensed a manner as practicable, what we understand to be facts appearing by the complaint which are necessary to an understanding of the case.

The corporate existence of the following is first alleged, namely: Seattle Electric Railway and Power Company, Seattle Consolidated Street Railway Company, the Seattle Traction Company, and the Seattle Electric Company, and said corporations are thereafter respectively mentioned in the complaint as "first company," "second company," "third company," and "present company." It further appears that on the 15th day of March, 1890, the

first company executed a deed of trust to the Illinois Trust and Savings Bank, a corporation. The said deed of trust, for brief reference, is mentioned throughout as the "first company's mortgage." By said mortgage the first company attempted to convey to said trustee all real and personal property of the mortgagor, consisting then of a line of street railway, and including both real and personal property in the city of Seattle. It is alleged that the mortgage was void as to the personal property for the reason that there was not attached to it an affidavit of good faith, as required by the laws of Washington; that the personal property and franchises of the first company were then of the value of $1,000,000, and that said property has constantly increased in value from that time to the present. The mortgage was made to secure bonds of the first company to the extent of $400,000, of which sum bonds were actually issued to the extent of $381,000.

It appears that on March 31, 1891, the first company, by its deed of that date, conveyed to the second company all the property, real and personal, then owned by the former company, and, on the next day, the second company executed a deed of trust covering said property to the Central Trust Company of the city of New York. Said trust deed is for brevity called the "second company's mortgage." This mortgage was made to secure bonds of the second company to the extent of $1,000,000, of which sum bonds were actually issued to the extent of $480,000, the appellant being the holder of $160,000 thereof.

It is alleged that, after the first company conveyed its assets to the second company, the latter acquired a large amount of corporate property, both real and personal, from its own earnings and from contributions by its stockholders, without any contribution or assistance from either

the first company or its mortgagee; that this additional property was in no way affected by, or subject to, the lien of the first company's mortgage, and was subject only to the lien of the second company's mortgage. Further allegations state that the second company, in accepting its deed from the first company, did undertake to pay when due the first company's bonds, but that the conveyance contained no language by which the second company pledged to the first company or its mortgagee any part of the second company's assets, or created any incumbrance in favor of the first company's mortgagee beyond what was already covered by that company's mortgage.

Afterwards the first company's mortgagee instituted suit in the circuit court of the United States for the district of Washington, by which it sought to foreclose its mortgage, and in that suit it made parties defendant, among others, both the first and second companies and the second company's mortgagee. Said defendants appeared in that suit by demurrer and objected to a decree therein so far as the personal property was concerned, because of the absence of the affidavit of good faith heretofore mentioned. Further objection was made to a decree in that action enforcing any lien against certain described real estate, on the ground that it was acquired by the second company after the transfer to it of the first company's assets. It is alleged, that the second company's mortgagee, trustee for the bonds held by appellant, as a defendant in the foreclosure suit, appeared by answer and denied the execution of the first company's mortgage and the priority of its lien; that the said several defenses should have been maintained and established by the defendant second company and its mortgagee for the benefit of the bonds, including appellant's; that the various demurrers and denials

were filed in said case in the month of March, 1895, and no active steps were thereafter taken until the entry of a final decree by consent on May 20, 1896, to which reference will be further hereinafter made.

It is further averred that about November, 1895, the second company conspired with the first and second companies' mortgagees and their various bondholders, excepting appellant, and, without the knowledge or consent of the latter, to deprive him of his rights and property in the bonds held by him. The plan of the alleged conspiracy, as set forth in the complaint, briefly stated, was as follows: Certain persons organized themselves as a committee called "the organization committee," and as such they effected the plan whereby the second company's mortgagee, the trustee for appellant's bonds, should relinquish its claim, as set up in its answer in the foreclosure suit, in favor of the holders of bonds of the first company, thus allowing the latter to take a decree and bid in the property for a nominal sum at mortgage sale, and in return therefor the second mortgage bondholders should participate in the reorganized company. But it is alleged that the appellant was to be excluded from participating in such reorganization, he being then absent from the United States.

The interposed defenses in the foreclosure suit were withdrawn, and decree of foreclosure thereupon entered on the date aforesaid. The plan of the reorganization required, that all holders of stocks and bonds of the second company should, within sixteen days, deposit with the first company's mortgagee all stocks and bonds held by them, together with a sum of money equal to ten per cent of the face value of all such bonds and floating debts, and two and one-half per cent of the par value of all such stocks;

that the payment of the money, however, might be made by installments, one-fourth at the time of the deposit of stocks and bonds, one-fourth on or before three months, and the balance on or before six months from said time; that, failing in that, such holders of stocks and bonds should forfeit and lose all rights therein and in the property covered thereby.

It is averred that appellant was not advised of this plan, and did not learn of it until about December, 1899; that he had previously, in May, 1895, signed a proposed plan by which he was to be admitted to an interest after foreclosure, but that such plan was abandoned during his absence from this country, and the other one substituted for it while he was in Central America. The plan of reorganization was carried out and appellant did not participate therein. He avers that, after returning to this country late in 1897, he first learned of the completed foreclosure, and says he was not aware of the abandonment of the first plan of reorganization in which he was to participate; that he immediately made inquiries, and was not at first informed that he was to be excluded; that in March, 1898, he began to investigate his real situation, but was not apprised of the second plan of reorganization; that it was not until December, 1899, that he got possession of the second reorganization agreement. At the time of the reorganization the property was conveyed to the third company, and, since then, by it to the present company.

Many other facts in detail are alleged in the complaint; but we believe the above statement, already extended, is sufficient save as further reference to the complaint and its exhibits may be hereinafter made. It concludes with a general prayer for an accounting by all the respondent companies, as to the original property, its increase, and

other accumulations of the companies, and also that the interests of appellant in the property owned by the second and third companies shall be determined and decreed to him. The respondents demurred to the complaint upon several grounds. The demurrers being sustained, the plaintiff declined to plead further, and the cause was dismissed. Plaintiff has appealed.

A number of questions are discussed by counsel, but for the determination of this case we find it unnecessary to pass upon any of them except that of the statute of limitations. That question was raised as one of the grounds of demurrer. Appellant seeks relief upon the ground of fraud. He says that he was fraudulently excluded from participating in the reorganization. The reorganization was effected in 1896, and all acts charged as fraud occurred either in that or the previous year. The suit was brought in January, 1901, more than four years after the acts charged as constituting the fraud were committed. Our statute provides that actions for relief upon the ground of fraud shall be brought within three years, but that the cause of action in such case shall not be deemed to have accrued "until the discovery by the aggrieved party of the facts constituting the fraud." Bal. Code, § 4800. Does the complaint show a discovery by appellant of the material facts constituting the alleged fraud at a time more than three years before this action was commenced?

It is true, as we have already seen, the statement is made in the complaint that appellant was not aware of the plan of reorganization until about December, 1899; and in another place it is stated that he did not get possession of the reorganization agreement until December, 1899. It is urged by appellant that said averments are sufficient to bring this case within the rule declared in *Stearns v.*

*Hochbrunn,* 24 Wash. 206, 64 Pac. 165. Such is, no doubt, true if other facts alleged are not inconsistent with these bare averments as to absence of discovery. In the case cited there was a direct and positive averment as to the time of discovery, and it does not appear that there were any other statements in the complaint inconsistent with such averments.

Appellant admits in his brief that he is not now entitled to share in the reorganization itself. Notwithstanding the averments of the complaint, the reorganization agreement, which is attached to the complaint as an exhibit, shows that appellant was not excluded from participating in the reorganization. All holders of the second company's stock and bonds were, by the terms of the agreement, placed upon equal footing. By its terms the appellant was privileged to deposit cash according to his holdings, ratably as other holders were premitted to do. Based upon appellant's holdings, it was necessary that he should deposit the aggregate sum of $25,112.50, only one-fourth of which, as we have seen, was required to be deposited at the beginning, the remainder being payable by installments. Having failed to make such deposit, and not having tendered the same, he admits that he is not entitled to share in the reorganization. He nevertheless alleges the facts about reorganization, and discusses them as forming a basis for the relief which he asks. He reasons that his absence from the country was known, and that the terms of the reorganization were intentionally made such as it was known he could not meet within the time fixed. But the fact remains that the terms of the reorganization did not exclude him. It may have been his misfortune that he was absent from the country at the time. But respondents' counsel urge that some duty rested upon appellant to provide local represen-

tation to guard his interests in so important a matter while he sojourned in a country so remote as Central America. An exhibit attached to the complaint does show that he was represented by an attorney in fact in the signing of the first reorganization agreement, some six months prior to the last one, but it is not made to appear that such representative was acting for him at the date of the last agreement. It must, therefore, be assumed here that he was not locally represented, and that his absence was known to those participating in the reorganization, which facts, together with the effected reorganization, he urges amounted to a fraud upon his rights.

Notwithstanding what he urges as a fraud in the reorganization, he does not seek relief directly therefrom. He admits that he has not placed himself in position to ask participation in the reorganiation, but he reasons that he is entitled to an accounting, and to a share in the value of the property which he claims was sacrificed at the mortgage sale, under the first company's foreclosure, as a part of the alleged fraudulent scheme. He urges that the defenses in the foreclosure suit set up by the second company's mortgagee, the trustee for appellant's bonds, were valid defenses, and that, if they had been pressed, they would have resulted in excluding a large amount of property from the lien of the first company's mortgage, to the benefit of the second company's bondholders, including himself. It will be remembered that those defenses were withdrawn by the second company's mortgagee, and the written stipulation for their withdrawal became a matter of record in the foreclosure case in May, 1896. A few days thereafter a decree of foreclosure *pro confesso* was entered, and this was soon followed by a foreclosure sale of all the property, including what appellant claims should

have been excluded from the first mortgage lien. He alleges that he had actual notice of all matters which were of public record. The above matters being all of public record as early as May, 1896, and soon thereafter, he, therefore, then had actual knowledge that the defenses had been abandoned by the second company's mortgagee, that the lien had been decreed against all the property, and that the same had been sold at judicial sale. A part of the property so sold was the same for which appellant by this action seeks an accounting, and in the value of which he seeks to share. The real fact which he alleges as constituting a fraud upon his rights in the property, for the value of which he seeks recovery, consisted of the abandonment of the defenses in the foreclosure suit. Under his theory, that act was a deliberate fraud upon his rights, since it left his property interests unprotected, and allowed them to be wrongfully subjected to the lien of the first company's mortgage. Appellant had actual knowledge thereof more than four years before he began his suit. For more than four years he had actual knowledge that the property, in the value of which he now seeks to share, had been judicially sold as subject to the lien of the first mortgage, and that the purchasers and subsequent holders held it by virtue of such lien and sale. The application of the doctrine of laches to the foregoing facts is much discussed by counsel, but we need not discuss that subject, since we find that the statute of limitations disposes of the case

It is true, as we have already seen, appellant alleges that he did not discover the plan of reorganization until a later time, but, as hereinbefore stated, he does not, by this action, seek participation in the reorganization. He seeks an accounting, and, as a result thereof, to share in property, or its value, which he claims was fraudulently permitted to

be judicially sold to the prejudice of his rights, and of which he had actual knowledge for more than four years before bringing his suit. Having knowledge that the property had thus passed into the hands of holders who depended upon the validity and priority of the lien, as decreed by the United States court, he cannot be permitted to disturb property rights and the relations of property holders after the period of limitation has run from the time these matters became of public record. It matters not that he may have hoped to be let into some reorganization scheme. He knew, nevertheless, that his alleged property interests had, in legal form at least, been swept away by the judicial sale, and that, if he would protect the same, the duty was upon him to do so within the period of the statute of limitations. His complaint, upon its face, shows that the facts constituting the real fraud, as alleged, were discovered at a time beyond the statutory period of limitations. Such being true, the complaint is not otherwise made good by the bare averment of a time of discovery. Under *Stearns v. Hochbrunn, supra,* the bare allegation as to time of discovery, standing alone, may be sufficient as against demurrer, but the bar of the statute cannot thereby be evaded when other facts are averred in detail, which are inconsistent therewith, and which disclose an actual discovery beyond the limitation period.

The judgment is affirmed.

MOUNT, C. J., and FULLERTON and DUNBAR, JJ., concur.