BRADY, Justice.
This is an appeal from a final judgment of the Circuit Court of Smith County, Mississippi, which munificently awarded the appellee the sum of $500.
The record discloses the following relevant facts. On May 12, 1964, appellee purchased from a vendor in Louisiana approximately 640 bales of alfalfa hay. The hay was loaded into a boxcar located five or six miles from Shreveport belonging to the Texas and Pacific Railroad Company, the original shipper. This car was located on a spur extending through a farm presumably owned by the vendor of the hay. The hay was loaded by agents of the seller under the supervision of the appellee. The appellee testified that he “was standing right there at the car door, having every bale loaded in there.”
The record fails to disclose that any agent of the appellant was present or had any part in the loading or inspection of the car. After the car was loaded, it was moved by the Texas and Pacific Railroad Company to Shreveport, Louisiana, and from Shreveport the car was subsequently moved by the appellant in interstate commerce and finally deposited at Taylors-ville, Mississippi, its final destination, on May 18, 1964.
After the car arrived at Taylorsville and appellee was notified, he and his son, Doyle' Buckley, and two grandsons, Wilbert *428 David Buckley and Javis Buckley, proceeded to unload the car. Appellee noticed that the hay had turned black and was molded and mildewed. He notified Mr. C. Q. Posey, the freight agent, who resided at Mount Olive, Mississippi, and complained to him that his hay was in a defective condition. Mr. Posey testified that he made a thorough examination of the shipment of hay and ascertained that 250 bales of the hay were damp, molded or mildewed. Although appellee’s proof was to the effect that the current price for alfalfa hay was $2 per bale, the record discloses he filed a claim alleging that 250 bales had been made worthless and that he was damaged in the value of $1 per bale, or a total of $250. Appellee nevertheless stored all the hay in his barn for his use.
Proof shows that hay or similar farm products, when stored in a green or un-dried condition in a closed, tight place, will become heated and sweat or become damp; that the oxidation which takes place in the wet or damp hay generates heat which in turn produces moisture and this, of course, affects the condition of the hay. The appellee admitted that if hay is stacked in his barn while it is too moist, it will deteriorate and rot.
Mr. G. D. Morris of Silver Creek, Mississippi, was the agent of appellant and also was engaged in raising cattle which were fed alfalfa and other types of hay. He testifed that if the hay had not been sufficiently dried but was stored with moisture in it, it would rot particularly if stored in a tight place.
. Mr. Morris further testified that most of tlie hay which had been received in Silver Creek had come from Salina, Kansas, and from Nebraska. The hay shipped from Salina, Kansas, required six or seven days to arrive at Taylorsville, and that from Nebraska required ten to twelve days. He stated that this hay was shipped in the same type of boxcar in which the hay for appellee was moved.
On cross-examination, this witness testified that the distance from Nebraska to Silver Creek, Mississippi, was 1000 to 1100 miles, and that the distance from Kansas to Silver Creek, Mississippi, was a little shorter, or 700 to 900 miles. He estimated the distance from Shreveport, Louisiana, to Taylorsville to be 400 to 500 miles, or about one-half the distance it was from Kansas and Nebraska. He testified that the time it takes for the car to make the trip depends upon the number of junction points it has to go through; that if the hay is properly cured before being transported, the time it takes to ship it will have nothing whatsoever to do with its condition upon arrival. He stated that the tightness of the boxcar or the lack of ventilation would have no effect upon, or cause damage to, the hay; that uncured hay will rot as easily and quickly in a ventilated boxcar as it will in an airtight car.
This witness has been employed by appellant for forty-three years and has had considerable experience in the movement of hay and foodstuff over the railroad in carload lots. He testified that the carload shipments of hay, including the boxcar in which this hay was shipped, were in the usual customary boxcars which are not ventilated; that out of all the hay shipments which have been made into Silver Creek during his employment, he recalled only two instances where alfalfa hay had been brought in which was damaged; that from the outside appearance of the bale the hay appeared to be perfect, but it was molded on the inside. The consignee exonerated the railroad from liability because he knew that the moisture was in the hay when it was baled and shipped.
Mr. Posey, the freight agent for appel-lee, corroborated the testimony of Mr. Morris. Posey testified that the car in question had no holes in the top; that water could not leak onto the hay. He testified there was no water leaking from *429 the car or from the hales of hay; that there was dampness in some of the bales of hay which had been broken apart, and this had caused those bales to mold; that the dampness in the hay was there because of heat which had been generated from the dampness in some of the bales. He testified that the boxcar was standard, with a type of wooden floor and steel top; that there were no holes where water could have entered in transit or rain could have leaked in. The record wholly fails to show that the boxcar was subjected to any kind of heat in the transportation of the hay. There is no proof to show there was anything improper or negligent on the part of appellant in the manner or method in which the shipment of hay was handled.
Mr. Charles S. Enochs, the trainmaster testified that the railroads do not open, at interchange points, the cars which are moved in interstate commerce; that the Illinois Central could have, as a matter of right, investigated the carload of hay to determine its condition, before picking it up in Shreveport; that if it had been found defective, the railroad could have rejected the car. Pie testified if there had been something visibly unsafe or something that could have alerted them, then an inspection could have been made, but that there was nothing visible to indicate a detrimental or unsafe condition, and nothing to alert them, and therefore they had no occasion to make any inspection of the car.
There is nothing in the record to indicate there were any improper or negligent delays, or that the shipment did not move in the usual course of business. There is nothing to indicate that Texas and Pacific Car No. 70834 was not a regular, standard, and proper boxcar for the transportation of hay and other farm products.
Appellant urgés two assignments of error: First, that the court erred in refusing to grant the peremptory instruction requested by appellant; and second, that the court erred in giving instruction No. 3 for appellee. If the first error assigned is well taken, then it is unnecessary to consider the second error.
Considering the first error, we are faced with the question: Did appel-lee establish a cause of action because of the negligence of the appellant? A review of the record discloses that the hay in question was loaded at Cash Point, Louisiana, under the direct supervision of the appellee. It was the first time appel-lee had ever purchased any hay which he shipped. It is obvious that the appellee examined the bales of hay as they were loaded into the boxcar. The proof conclusively shows that it was a standard boxcar used in modern transportation of hay and other farm products. The- record wholly fails to show that there were any defects or holes whereby moisture could have gotten into the boxcar subsequent to the loading and sealing of the car.
The proof shows that appellee made no objection to the type of car into which he loaded his hay, and made no requests whatsoever of appellant with reference to the protection and transportation of the hay. Appellee testified that if the hay were stacked in his own barn when it was too moist it would deteriorate and rot. This disclosed that he knew, as is commonly known, that uncured hay, if stacked in an enclosure, will sweat and rot.
The proof in the record is overwhelming that the hay went through a process of becoming heated when it was in transit, and that this heat was caused by the moisture which was in the hay at the time it was loaded. The record wholly fails to show that there was any negligence on the part of the appellant in the transportation of this hay or that the six or seven days’ time utilized in transporting it from Cash Point, a tri-weekly service point, to its ultimate destination, was more time than *430 was necessary. The proof shows that sealed-tight cars were customarily used, and that these are used to safely transport hay. The record wholly fails to show that this hay, once it was loaded in the boxcar of the initial carrier, Texas and Pacific Railroad Company, was exposed to any unusual amount of heat, or to the elements.
It is well recognized at common law and under the provisions of the uniform domestic straight bill of lading under which the hay was shipped that the carrier is not liable for the shipper’s negligence or default. Section 1(b) of the contract terms and conditions provides as follows:
No- carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by * * * or the act or default of the shipper or owner * * * the carrier or party in possession shall not be liable for loss, damage or delay occurring while the property is stopped and held in transit upon the request of the shipper, owner, or party entitled to make such request, or resulting from a defect or vice in the property. * * *
In 13 C.J.S. Carriers § 79 at 152 (1939), it is pointed out:
Where the destruction of, or the injury to, the goods is due to their inherent nature and qualities, or to defects therein, the carrier is not liable, if its own negligence did not occasion or contribute to the injury. * * ■ *
Numerous cases cited from twenty-two states amply support this well recognized rule of law.
It is further pointed out in § 79, page 155, as follows:
Applying the general principles here stated it has been held that the carrier is not liable for loss or injury due solely to such causes as fermentation, depreciation, drying, decay, heating merely as a result of transportation, spontaneous combustion, effervescence, putrefaction, or corrosion or rusting resulting from the chemical union of parts of the goods shipped. * * *
In 14 American Jurisprudence 2d Carriers section 525 at 56 (1964), it is noted:
A common carrier is not liable as an insurer for the loss of, or injury to, property which arises from the nature and inherent character of the property itself.
The appellant proved that an airtight car was perfectly safe for the transportation of properly cured hay, and that moist or undried hay would become heated and ferment and decay as easily in an open or ventilated boxcar as it would in an airtight boxcar.
The appellee admitted that he knew nothing whatsoever about the freight schedules, since this was his first shipment of hay, and he offered no proof in this regard, To the contrary, the appellant’s evidence clearly shows that the hay was moved in the usual course of business and customary time, without any unusual delay.
In Southeastern Express Company v. Namie, 182 Miss. 447, 459, 181 So. 515-516 (1938), this Court stated:
The liability of a common carrier of inanimate freight or express is practically that of an insurer against loss, injury, or damage except as to loss or injury caused by * * * the inherent nature or quality of the goods * * *.
See Illinois Central Railroad Co. v. Paxton, 187 Miss. 858, 193 So. 915 (1940). The evidence in the record places the case at bar clearly within this exception which relieves the carrier from liability.
We hold that the carrier, appellant in the case at bar, has met the imposed bur *431 den and shown that the loss or damage to the hay by heating was caused by vices inherent in the nature and quality of the hay at the time it was loaded and delivered by the appellee to the appellant. The appellant was without fault or negligence on its part which caused or contributed to the damage. Parker Corn Co. v. Chicago, B. & Q. R. R., 120 Kan. 484, 244 P. 240 (1926); Faucher v. Wilson, 68 N.H. 338, 38 A. 1002, 39 L.R.A. 431 (1895); The Ship Howard v. Wissman, 59 U.S. (18 Howard) 231, 15 L.Ed. 363 (1856).
For the foregoing reasons, the peremptory instruction of the appellant should have been granted, and the judgment is reversed and judgment is entered here for the appellant.
Reversed and judgment for appellant.
ETHRIDGE, C. J., and PATTERSON, INZER and ROBERTSON, JJ., concur.