## No. 504

### First Circuit

### S. B. EASTERLY & SON v. RAY

(October 10, 1929. Opinion and Decree.)
(December 3, 1929. Rehearing Refused.)
(January 6, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

A. W. Spiller, of Hammond, attorney for plaintiffs, appellants.

Burns & Pierson, of Ponchatoula, and S. S. Reid, of Amite, attorneys for defendant, appellee.

LECHE, J. Plaintiffs received from the defendant his two checks in representation of the price of two carloads of beans sold by plaintiffs to defendant. Payment of the two checks were stopped and refused upon the instruction of the drawer, and the present suit is to recover their face value.

Plaintiffs' demand is opposed in substance, on the ground that the beans contained in the two cars and delivered to defendant were worthless, and therefore that there was failure of consideration for the checks.

Plaintiffs are residents of Denham Springs, in the parish of Livingston, where they conduct a mercantile business. They buy and sell vegetables and fruit and other farm products. Defendant resides at Ponchatoula, in the parish of Tangipahoa, where he also buys vegetables and farm products, which he ships and sells in northern markets.

The agreement for the sale of the two carloads of beans was made by plaintiffs with defendant through telephone conversations, the two towns being about 35 or 40 miles apart.

The beans were loaded on cars at Denham Springs, and by defendant's orders were shipped north, where they were offered for sale. One car was consigned to Weingart Fruit & Vegetable Company, and the other to the Fifth City Produce Company, both of these concerns being located in Cleveland, Ohio. The account sales or returns from these two shipments show that after paying charges for transportation, inspections, commissions, cartage, etc., the beans were sold at a loss according to the price at which they were purchased from the plaintiffs. There is no dispute between the parties as to these facts, but there is serious contention between them as to who should bear that loss.

Plaintiffs before loading and shipping the beans caused them to be inspected by S. M. Sharp, who says that he was inspecting for the state department of agriculture, co-operating with the federal inspection service. Sharp issued two certificates showing that he graded one carload as U. S. Fancy and the other U. S. No. 1 about 75 per cent stock U. S. Fancy. These certificates are dated respectively May 21, 1928, and May 24, 1928. The same beans were again inspected as to condition and quality at the request of the consignees in Cleveland, Ohio, within five days of the time they had been inspected at Denham Springs before shipment. The Cleveland inspectors were also disinterested and acted in their official capacity. The report on one carload shows that the beans were in "aged and wilted condition, spotted and many hampers showing small nests of decay." The other report shows, "russeting .15 to 25% mostly severe, 3 to 5% of stock shows anthracnose, in a few hampers 3 to 5% shows soil rot or watery soft rot, mostly appearing as small spots."

It is shown that beans in good condition when shipped in properly iced and ventilated cars, and there is nothing to indicate that the beans in this case were otherwise shipped and carried, will remain in good condition for 10 to 14 days, and it is therefore obvious that when shipped the beans in these two cars were not in good condition, notwithstanding the inspection certificates issued at Denham Springs.

The consignees in Cleveland, in order to minimize damages, sold the two carloads of

beans to the best advantage, and were able to realize therefrom $854.55, a sum insufficient to meet the expenses for shipping, transporting, and selling the same.

The spoilt condition of the beans when they were delivered in Cleveland seems to be thoroughly supported by the evidence. Plaintiffs obviously relied upon the certificates of inspection issued to them at Denham Springs by Sharp, the agricultural agent, and they believed that this was all the guaranty that defendant had the right to expect as to the quality and grade of the beans, and we believe that they acted in perfect good faith. But, on the other hand, defendant testifies that what he bought were good beans, and that he placed no reliance on these certificates of inspection, for the reason that he had been, in former purchases from other parties, sadly misled by such certificates. This condition of the minds of the sellers and the purchaser is shown with reasonable certainty and they were both in earnest, good faith. The sellers relied on the inspection certificates, and the defendant, who lacked confidence therein, insisted on good beans. The result of the whole transaction leads to the conclusion that plaintiffs were misled by Sharp's certificate, and that defendant did not get beans that were good, such as he had agreed to buy.

If the facts in this case be viewed without regard to the conditions or understanding under which the sale was made, the warranty implied by law on the part of the seller requires that the thing sold should be sound, and if it perishes through the badness of its quality, the seller must sustain the loss. Civ. Code, art. 2532.

The district judge rejected plaintiffs' demand. We believe his finding was correct, and his judgment is therefore affirmed.