## OVERBURY v. PLATTEN et al.
### No. 96.

Circuit Court of Appeals, Second Circuit.
Dec. 18, 1939.

Frank W. Jackson, of New York City, for appellant.

Parker & Aaron, of New York City (Charles Adkins Baker, of New York City, of counsel), for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff, Overbury, appeals from a judgment, entered upon a directed verdict, in an action for breach of contract and for the conversion of 1574 shares of common stock of the "Flintkote Company",

which he had pledged with the defendants' decedent, Denison. He had agreed to buy from Denison 200 shares of the common stock of the Aluminum Company of America for $48,960, and the Flintkote shares were pledged as security for his performance. Denison died, and the defendants were appointed as his executors in New Jersey where he had lived. They extended the date of performance of the contract from time to time until March 19, 1936, when Overbury made a tender of the balance of the price then due, and demanded delivery of both the Aluminum and the Flintkote shares. The defendants refused to deliver the Flintkote shares, justifying their refusal because of an attachment, levied on November 4th, 1935, which came about as follows. Denison had held some promissory notes signed by Overbury, on which there was due about $54,000, and which the defendants assigned to one Farley, after Denison's death. Overbury says, and arguendo we shall assume it to be true, that this assignment was only as trustee for the defendants in order that Farley, who lived in New York, might be better able to attach the Flintkote shares; and that the defendants remained for all purposes the beneficial owners. Having thus got title to the notes, Farley procured a writ of attachment, signed by a justice of the Supreme Court of New York, and attached the shares in the defendants' possession, on the ground that Overbury was a non-resident, which was true. On March 25, 1936, the day before the action at bar was commenced, the defendants sold all the Aluminum shares, and because they brought less than the purchase price, they also sold 500 of the pledged shares to make up the deficiency, as the contract gave them power to do. The other pledged shares, 1074 in number, they then delivered to the sheriff. In the spring of 1937, Overbury moved to vacate Farley's attachment, and was unsuccessful in the lower court, but successful on appeal to the Appellate Division for the Second Department. Farley v. Overbury, 252 App.Div. 882, 299 N.Y.S. 990. The ground for this ruling was that Farley had not adequately shown his title to the notes; but, when Overbury later sought a summary judgment in the same action, and the same court saw the actual assignment, it held the title good. Farley v. Overbury, 254 App.Div. 739, 3 N.Y.S.2d 990. (Since then Farley has obtained a judgment upon the notes, which is now upon appeal). Three questions determine the appeal at bar: (1) Whether the defendants, acting through Farley, were free to attach the pledged shares; (2) whether, if so, the attachment was a valid lien on March 19, 1936, the date of the refusal, notwithstanding its later vacation for a defect in the papers; (3) whether, if it was then a valid lien, it excused the refusal.

Overbury's equity in the pledge, whether or not there was a surplus, would certainly have been subject to attachment, had Farley been acting on his own behalf. Warner v. Fourth National Bank, 115 N.Y. 251, 22 N.E. 172; Clements v. Doblin, 209 App.Div. 208, 204 N.Y.S. 413, affirmed 239 N.Y. 526, 147 N.E. 180. Since we are assuming that he was merely their dummy, the defendants must maintain that they had as good a right to attach as he. We hold that they had. It was indeed once held in Massachusetts that a pledgee could not sue upon the secured debt without surrendering the pledge (Cleverly v. Brackett, 8 Mass. 150), but any such doctrine has long since been repudiated. Cornwall v. Gould, 4 Pick., Mass., 444; Beckwith v. Sibley, 11 Pick., Mass., 482; Whitwell v. Brigham, 19 Pick., Mass., 117; Taylor v. Cheever, 6 Gray, Mass., 146. And in Wright v. Guilmette, 94 Vt. 372, 111 A. 459, and Ottumwa National Bank v. Totten, 114 Mo.App. 97, 89 S.W. 65, the pledgee was allowed, not only to sue, but to attach the "equity" in the pledge itself. If so, he is à fortiori free to attach for another debt, for the only objection ever raised has been that, by taking the pledge, he has impliedly agreed to look only to it for payment. It is true that a pledgee owes a duty to care for the pledge and to restore it after redemption, and that of course includes any "equity"; but attaching it for another debt is not inconsistent with that duty. Plainly the pledgee may attach any other property of the pledgor, and the "equity" is in fact just that. We conclude therefore that if the Farley attachment would have been a valid lien in Farley's hands on March 19, 1936, it was not the less so, because Farley was acting for the defendants.

Since Overbury was concededly a non-resident, the validity of the attachment depended upon two points: Farley's power to sue in his own name, notwithstanding his relation with the defendants, and the sufficiency of the papers. It is

settled beyond cavil in New York that an assignee of the "title" to a chose in action may sue in his own name, though he have no beneficial interest in it. Titus v. Wallick, 306 U.S. 282, 59 S.Ct. 557, 83 L.Ed. 653; Sheridan v. Mayor, 68 N.Y. 30; Spencer v. Standard C. & M. Co., 237 N.Y. 479, 143 N.E. 651. Indeed, the Appellate Division so held in Farley v. Overbury, as soon as it saw the actual assignment. The papers were, however, defective in setting out the assignment; and that defect was the fault of Farley, and therefore, by hypothesis, of the defendants, though the court got jurisdiction and the writ was not void, as in Kerr v. Mount, 28 N.Y. 659. Conceivably it might have been held that, although a writ which had been irregularly issued would protect the sheriff who executed it, it would not protect the attaching creditor who made the mistake. Such is not, however, the law of New York; on the contrary, certainly when the creditor acts in good faith and in ignorance of the invalidity of the writ (as the court here found), he is not held liable for procuring an erroneous allocatur; he is not chargeable with the judicial error of which he is the cause except in so far as he may be liable upon any bond given as a condition of procuring the writ. Day v. Bach, 87 N.Y. 56; Hess v. Hess, 117 N.Y. 306, 22 N.E. 956; Warner Co. v. Andrews, 2 Cir., 73 F.2d 287. Thus, not only were the defendants free to attach the shares, but the lien was valid at the time of their refusal.

The last question is whether this lien excused the defendants' refusal. As we understand Overbury's argument, it is that, since the attachment was the act of the defendants, they cannot avail themselves of it to excuse performance of their own promise, which was both to deliver the Aluminum shares, and to surrender the Flintkote shares, upon tender of the price. That however is merely another way of saying that no pledgee may attach the pledge because the attachment will prevent performance of his promise to return it. It is of course true that, with certain exceptions not here important, an obligor takes the risk of whatever will prevent his performance, but that does not include prevention by the obligee himself. If for example the buyer in a contract of sale transfers his interest in the goods, the seller is excused from delivery to him. So too, if the buyer's creditors seize his interest in invitum. And if the seller to

whom the buyer owes a separate debt is to have the power to attach, the consequent prevention of delivery must be attributed not to him but to the buyer, who by failing to pay gives the seller power to seize the goods by an independent title, quite as much as though the buyer had himself transferred it. That is this case, and we need discuss none of the authorities cited by the plaintiff except Rodgers v. Larrimore & Perkins, 188 Ky. 468, 222 S.W. 512. There the defendant had agreed to sell tobacco to the plaintiffs, and before delivery, the prospective interest of one of the buyers had been attached. The seller used this as an excuse for disposing of the tobacco elsewhere at a higher price, although the attaching creditor had informed him that he might deliver to the buyers. The court said that the attachment did not end the contract, as it probably did not; but it did not say that it would not have excused delivery to the buyer if the attaching creditor had not consented; and clearly it would. For this reason it does not help Overbury here.

Judgment affirmed.