ERNEST E. FADLER CO. v. HESSER.

No. 3574.

Circuit Court of Appeals, Tenth Circuit.

March 5, 1948.

Warren S. Earhart, of Kansas City, Mo. (D. Howe Moffat, of Salt Lake City, Utah, on the brief), for appellant.

Edward M. Morrissey, of Salt Lake City, Utah, for appellee.

Before PHILLIPS, HUXMAN and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Ernest E. Fadler Company[1] obtained a reparation order against O. P. Hesser for the balance alleged to be due on a carload of mixed vegetables in a proceeding brought under the Perishable Agricultural Commodities Act of 1930,[2] 7 U.S.C.A. §§ 499a to r, inclusive. Hesser appealed from the reparation order. From a judgment setting aside the order, the Company has appealed.

On June 20, 1945, the Company advised Hesser it had been promised a carload of mixed vegetables out of Louisiana. Hesser requested the Company to communicate with him when it received further information respecting the vegetables. On June 22, 1945, the Company sent Hesser a telegram reading in part as follows: "Out from Hammond last night. WFEX 60628, 271 Bell peppers 2.65, 92 cukes 2.26, 43 squash 2.25, 156 eggplant 2.90, 4 Valentine beans 3.00, 50 crates Triumphs, 1.80 net FOB. * * *"

The vegetables were ordered by the Company from the R & G Auction Company at Hammond, Louisiana. They were shipped from that point on June 21, 1945, to the Company at Kansas City, Missouri. On June 22, 1945, the Company directed the carrier to divert the car to Hesser at Salt Lake City and sent Hesser an invoice which listed the number of bushels of the several kinds of vegetables in the car, the f.o.b. price per bushel, and the total price of $1,577.22. The invoice in part read: "Sold to O. P. Hesser Co. * * * Date sold 6/22/45 * * * Terms: Open— Please mail check." The invoice was received by Hesser before the car arrived in Salt Lake City on June 29, 1945. While the shipment was in transit, Hesser sold the vegetables to the Smedley Fruit Company in Salt Lake City and directed the carrier to deliver the shipment to the Smedley Company.

The vegetables were inspected by the United States Department of Agriculture before the shipment from Hammond. The report of that inspection justified the conclusion that the vegetables were merchantable at the time of their shipment from Hammond.

The car was due in Memphis, Tennessee, at 12:40 A. M., June 23, 1945, but was delayed and did not arrive at Memphis until 2:15 P.M., June 23, 1945. The car was due in Salt Lake City, June 28, 1945, at 8 A. M., but was delayed and did not arrive until 8:55 A. M., June 29.

The vegetables were inspected by the United States Department of Agriculture on their arrival at Salt Lake City and the report of that inspection showed a substantial portion of the vegetables were then unmerchantable. Witnesses who had examined the vegetables testified they were not in a merchantable condition on their arrival at Salt Lake City.

On July 1, 1945, Hesser wired the Company the substance of the inspection report at Salt Lake City. On July 2, 1945, Hesser advised the Company that he rejected the vegetables and requested instructions as to their disposition. Thereafter, on the same day, Hesser communicated with the Company by telephone and was instructed by the Company to dispose of the vegetables at the best price obtainable. Hesser then consigned the vegetables to the

---

[1] Hereinafter called the Company.

[2] Hereinafter called the Act.

Hancock Fruit Company at Salt Lake City and so advised the Company. The Hancock Company sold the vegetables for $1,306.24. It deducted therefrom commission, freight charges, storage, and ice charges, amounting to $764.06, and remitted the balance of $542.18 to Hesser who transmitted it to the Company.

The trial court found that the vegetables were non-merchantable on their arrival in Salt Lake City; that Hesser rejected the vegetables and requested instructions from the Company as to their disposition, and that the Company instructed Hesser to dispose of the vegetables at the best price obtainable; and that Hesser, with the consent of the Company, consigned the vegetables to the Hancock Company for disposition.

The Company contends that Regulation 46.24(i) (j), promulgated by the Secretary of Agriculture, under § 15 of the Act (7 U.S.C.A. § 499o), supra, and set forth in note 3, governs the rights of the parties; that the sale was f.o.b.; that the vegetables were in suitable shipping condition at the time of the shipment from the point of origin; that the deterioration resulted from damage and delay in transit, the risk of which Hesser assumed, and that Hesser did not have the right to reject the vegetables on their arrival at Salt Lake City.

■ Section 499g(c), supra, provides that on an appeal from an order of reparation, there shall be a trial de novo in all respects like other civil suits for damages, except that the findings of fact and the order of the Secretary shall be prima facie evidence of the facts therein stated. The issue before the Secretary of Agriculture in the reparation proceedings was whether there was a sale of the vegetables by the Company to Hesser, or whether Hesser merely was to act as a broker for the sale of the vegetables on their arrival at Salt Lake City. The issues on the trial below were (1) whether Hesser had the right to reject the vegetables, and (2) whether, even though Hesser did not have the right to reject the vegetables, the company consented to such rejection and assented to a rescission. The fact that Hesser did not raise those defenses in the proceeding before the Secretary of Agriculture did not preclude him below. Any proper defense was open to him.[4]

■ The Act was not intended to repeal the law of sales or to destroy the rights and liabilities of the contracting parties thereunder.[5]

■ Here, the goods were sold by description furnished by the Company. Where the sale is by description, under the Uniform Sales Act,[6] and in some jurisdictions apart from the statute,[7] there is an implied warranty that the goods are of merchantable quality. The question arises as to the time the goods must meet the warranty of merchantable quality. The general rule is that the implied warranty relates only to the time of sale. In the sale of perishable property, where there is an implied warranty that the goods are suitable for shipment because the buyer justifiably relies on the seller to select goods suitable for shipment, the seller does

---

3 "(i) 'F.o.b. * * * means that the produce quoted or sold is to be placed free on board the * * * car * * * at shipping point, in suitable shipping condition * * * and that the buyer assumes all risk of damage and delay in transit not caused by the shipper * * *. The buyer shall have the right of inspection at destination * * * for the purpose of determining that the produce shipped complied with the terms of the contract * * * at time of shipment, subject to the provisions covering suitable shipping condition. Such right of inspection shall not convey or imply any right of rejection by the buyer because of any loss, damage, deterioration, or change which has occurred in transit.'

"(j) 'Suitable shipping condition,' in relation to direct shipments, means that the commodity, at time of billing, is in a condition which, if the shipment is handled under normal transportation service and conditions, will assure delivery without abnormal deterioration at the destination specified in the contract of sale."

4 Spano v. Western Fruit Growers, Inc., 10 Cir., 83 F.2d 150, 152.

5 LeRoy Dyal Co., Inc., v. Allen, 4 Cir., 161 F.2d 152, 157.

6 Uniform Sales Act, 81 Utah Code Ann.1943, 81—1—15(2). The Uniform Sales Act was adopted in Utah in 1917.

7 Williston on Sales, 2d Ed., Vol. 1, § 233, p. 451.

not then assume the risk of deterioration due to abnormal delay in transit or other abnormal conditions, while the goods are in transit. His implied warranty is that the goods are fit for shipment at the time and place of sale.[8] Ordinarily, both under the Uniform Sales Act and at common law, title to an f.o.b. sale passes on delivery to the carrier,[9] but here there was no f.o.b. sale at the time the shipment left Hammond. The sale took place as the result of the telegram and invoice sent by the Company to Hesser on June 22, after the shipment had left Hammond, and Hesser's sale of the vegetables to the Smedley Company and his order to the carrier to divert the car to the Smedley Company. The sale, therefore, took place after the vegetables left Hammond, but the exact time is not disclosed by this record.

The Regulations are not contrary to the principles of the law of sales above stated. Regulation 46.24(k) reads: "(k) 'Suitable shipping conditions,' in connection with reconsigned, rolling, or tramp cars, means that the commodity, *at time of sale,* meets the requirements of this phrase as defined in paragraph (j) of this section, relating to direct shipments." (Italics ours.)

■ We conclude, therefore, that there was an implied warranty that the vegetables were merchantable, not when the vegetables left Hammond, Louisiana, but at the time Hesser accepted the Company's offer manifest by its telegram and the invoice, by selling and ordering the shipment diverted to the Smedley Company while the vegetables were in transit.

Upon whom rested the burden of proof respecting the merchantable quality of the vegetables and their suitableness for shipment at the time and place of the sale, under the peculiar facts of this case, is a troublesome question which we deem it unnecessary to decide. Likewise, we deem it unnecessary to determine whether the evidence would have warranted the court in finding that the vegetables were not of merchantable quality and not in suitable shipping condition at the time and place of sale.

■ When the vegetables reached Salt Lake City and were inspected by the United States Department of Agriculture and by Hesser, he promptly notified the Company that he rejected the vegetables because of their condition, and requested instructions from the Company as to their disposition. The Company instructed him to dispose of the vegetables at the best price obtainable. In so doing, it accepted the goods back without qualification and without making it clear that it was receiving them merely to dispose of them on account of Hesser to mitigate the damages. After the resale in accordance with its instructions, it accepted the net proceeds of the resale without qualification. Where the goods are in conformity with the contract and title has passed to the buyer, he cannot thrust them back upon the seller,[10] but, if under such circumstances, the buyer promptly notifies the seller that he rejects the goods on the ground that they do not meet the conditions of an implied warranty, and tenders the goods back to the seller, and the seller takes the goods back without making it clear that he is receiving them merely to dispose of them on account of the buyer to mitigate the damages and without making it clear that he is not assenting to a rescission, the normal inference from taking the goods back and resuming dominion over them is assent to rescission and the discharge of the original sale.[11]

■ While the English law denies the right of rescission of an executed sale for breach of warranty, and, in a diminishing number of jurisdictions, that right is denied in the United States, the weight of au-

8 Rhynas v. Keck, 179 Iowa 422, 161 N.W. 486, 488; Rinelli v. Rubino, 68 Ind.App. 314, 120 N.E. 388, 389; Bull v. Robinson, 10 Exch. 342; Leopold v. Van Kirk, 27 Wis. 152, 157; Mann v. Everston, 32 Ind. 355, 356; Williston on Sales, Vol. 1, 2d Ed., § 245, p. 494.

9 Williston on Sales, 2d Ed., Vol. 1, § 278, p. 582; Middleton v. Evans, 86 Utah 396, 45 P.2d 570, 572, 573.

10 Williston on Sales, 2d Ed., Vol. 2, § 497, p. 1296.

11 Williston on Sales, Vol. 2, 2d Ed., § 497, p. 1296; Schmid v. Klinck Packing Co., Sup., 189 N.Y.S. 534, 535; Cooper v. Kulp, 214 Ala. 286, 107 So. 808; Grouse v. Wolf, 4 Misc. 535, 24 N.Y.S. 703; Calos v. Gest, Sup., 188 N. Y.S. 466, 468.

thority in the United States allows it.[12] Under the Uniform Sales Act, the buyer may rescind an executed sale for breach of warranty.[13]

We conclude, therefore, that the evidence and the findings of the trial court warranted the legal conclusion that the Company assented to the proposed rescission and discharge of the original sale.

The judgment is, therefore, affirmed.

HUXMAN, Circuit Judge, concurs in the result.

---

[12] Williston on Sales, Vol. 2, 2d Ed., § 608(a), p. 1522.

[13] Williston on Contracts, Revised Ed., Vol. 5, § 1462, p. 4089.