ROTHENBERG v. H. ROTHSTEIN
& SONS.

No. 9965.

United States Court of Appeals
Third Circuit.

Argued Dec. 8, 1949.

Decided March 24, 1950.

Hirsh W. Stalberg, Philadelphia, Pa.
(Shapiro, Conner, Rosenfeld & Stalberg,
Philadelphia, Pa., on the brief), for appellant.

Milton H. Friedman, Buffalo, N. Y.
(Harry W. Kurtzman, Philadelphia, Pa., on
the brief), for appellee.

Before BIGGS, Chief Judge and O'CONNELL and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

On this appeal, the parties have presented two issues for determination: (1) whether the defendants properly raised their defense based on the Statute of Frauds contained in the Pennsylvania Sales Act, 69 P.S. § 42, and (2) whether the learned trial judge erred in holding that the contract involved was outside the statute. However, on examination, the record discloses another, and more important, issue which, because it was not here developed by the parties, warrants the granting of an opportunity for them to do so.

Rothenberg commenced this litigation by complaint to the Secretary of Agriculture pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C.A. § 499f, seeking thereby to enforce against the Rothsteins liability for a specific violation of the Act.[1]

In accordance with the statutory procedure, a hearing was had in Philadelphia, Pennsylvania, and ultimately damages were awarded by the Secretary's Judicial Officer to the plaintiff. The defendants perfected their appeal to the District Court, in which

---

1. 7 U.S.C.A. § 499b:

"*Unfair conduct; what constitutes*

"It shall be unlawful in or in connection with any transaction in interstate or foreign commerce—

\* \* \* \* \* \* \*

"(2) For any dealer to reject or fail to deliver in accordance with the terms of the contract without reasonable cause any perishable agricultural commodity bought or sold or contracted to be bought, sold, or consigned in interstate or foreign commerce by such dealer;
\* \* \*"

7 U.S.C.A. § 499e:

"*Liability to persons injured—Amount*

*of damages.* (a) If any commission merchant, dealer, or broker violates any provision of section 499b of this chapter he shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation.

"*Remedies.* (b) Such liability may be enforced either (1) by complaint to the Secretary as hereinafter provided, or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies."

tribunal they were entitled to, and obtained, a "trial de novo * * * [proceeding] in all respects like other civil suits for damages, except that the findings of fact and order * * * of the Secretary shall be prima-facie evidence of the facts therein stated. * * *" 7 U.S.C.A. § 499g(c). The jury returned a verdict against them and this appeal is taken from the judgment entered thereon, their motion for judgment under Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A., having been denied, D.C., 9 F.R.D. 211.[2]

■ It is undisputed that on March 23, 1944, by means of the telephone, the defendants, in Philadelphia, Pennsylvania, accepted the offer of the plaintiff, in Buffalo, New York, to sell them a specific carload of fresh peas. Thus, the contract would appear to have been made in Pennsylvania. Restatement, Conflict of Laws, Sec. 326, Comment C.

It is further undisputed that the car reached Philadelphia, at the latest, on the morning of March 27, 1944, and that the defendants refused to take the peas on the ground that inspection disclosed a failure to conform to the qualitative description allegedly given to them by the plaintiff when the contract was made. The telegraphic exchanges between the parties are summarized in the margin.[3] Later the peas were sold by the plaintiff.

The remaining facts are established by the jury's verdict and are controlling, especially since the findings are not now attacked:

(1) The defendants were delivered peas of the quality described by the plaintiff, and therefore breached their contract in refusing the car.

(2) The carload of peas was purchased under a term of contract, "acceptance final", which gave them no right of rejection.[4]

(3) The carload of peas was not rejected by the defendants within a reasonable time, which, under the Regulations of the Secretary of Agriculture, is not more than twenty-four hours after receipt of notice of the arrival of a rail shipment.[5]

It is obvious that, other considerations aside, the jury might well have found for the plaintiff on any one of these three grounds, and on either of the latter two grounds even though the plaintiff had misrepresented the peas.

Finally, it may be noted that the reparation award to the plaintiff by the Secretary was based primarily on the finding that the contract included the term "acceptance final", which defendants had denied. However, it was also found, as fact, that the defendants gave notice of rejection to the plaintiff more than twenty-four hours after delivery and inspection of the car, and that the contract was for "good" peas only. In this latter respect, the defendants had contended, as they did at the trial below, that

2. A motion for a new trial was withdrawn, but in any event it was denied by the District Judge, and the order denying both motions was properly entered on the Docket.

3. (1) March 23, 1944, 4:50 P.M., plaintiff confirmed diverting the specific car, stating, *inter alia*, "Buffalo Acceptance Final", but not referring to the quality of the peas.
(2) March 27, 1944, 12:04 P.M., defendants complaint concluding "wish you would place this car elsewhere".
(3) March 27, 1944, 3:25 P.M., plaintiff stated nothing could be done.
(4) March 28, 1944, 3:12 P.M., defendants stated they had not read the telegram of March 23, 1944; that plaintiff had described the car as "good quality dark green pods"; and that defendants would "mail you check 25 cents basket or bac haul car to Buffalo and pay extra charges".
(5) March 28, 1944, 4:31 P.M., plaintiff denied description and offered to buy back the car at "2.50".
(6) March 28, 1944, 8:30 P.M., defendants rejected the car.

4. See Footnote 3, supra. The term is currently defined in the Regulations of the Secretary of Agriculture as it was at the times here involved: 7 C.F.R. (1949 ed.) § 46.24. As to its application and effect, see LeRoy Dyal Co. v. Allen, 4 Cir., 1947, 161 F.2d 152, 157.

5. See 7 C.F.R. (1949 ed.) § 46.2(r) and § 46.2(s).

the contract was for "U. S. No. 1 peas" with "dark green pods and green calyx".

The defendants asserted the Statute of Frauds in their pleading before the Secretary, but it was found that the telegrams exchanged by the parties constituted a memorandum sufficient to remove the agreement from its operation. The defendants also invoked the Statute of Frauds in their enumeration of the bases for the appeal to the court below.[6]

The plaintiff now seeks to avert this defense, on the instant appeal, for the reason that, aside from the pleadings, the defendants did not otherwise raise the issue in the District Court. However, it clearly appears that the defendants included in their requests for charge what is tantamount to a motion for a directed verdict. After the jury was instructed, the defendants took exception to the failure of the trial judge to charge as requested, and were about to state the reasons therefor. At this point in the proceedings, the learned District Judge foreclosed further discussion, advising the defendants that he had not denied, but reserved the point. The defendants acceded, and did not argue the issue at the time. Accordingly, it was proper to raise the issue in the motion for judgment.

Notwithstanding this, the parties have devoted their attention to the question, whether the contract met the requirements of the Pennsylvania Statute of Frauds. It may be noted, in this respect, that while the court below found, as did the Secretary, the existence of a memorandum made up of the telegrams of the parties, nevertheless, its finding was in part based upon an error of fact: the telegram of March 23, 1944, was treated as having been sent by the defendants to the plaintiff, in which event it would have been a sufficient memorandum, whereas in fact it was a self-serving communication dispatched by the plaintiff.[7] However, for the reason shortly to be stated, we deem it inadvisable to dispose of this problem at this time.

Although the contract, as we have said, was apparently made in Pennsylvania, it must be stated that the controversy is in the federal courts not by reason of diversity of citizenship and jurisdictional amount, but rather because of the federal statute already set out. In such event, we are not circumscribed by Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, nor are we thus "only another court of the State". Holmberg v. Armbrecht, 1946, 327 U.S. 392, 394, 66 S.Ct. 582, 583, 90 L.Ed. 743, 162 A.L.R. 719. Were we such, of course, the difficulty here would vanish in view of Cohen v. Beneficial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, and Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231. This being the case, it must be apparent that the effect on these proceedings which the Pennsylvania Statute of Frauds has, or should have, is a decisive problem. Breaking it up into specific questions, they are:

(1) Is the Pennsylvania Statute of Frauds, 69 P.S. § 42, substantive or procedural in character? See Continental Collieries, Inc., v. Shober, 3 Cir., 1942, 130 F. 2d 631.

(2) Is the reference in 7 U.S.C.A. § 499e (b) a reference to procedural or to substantive rights?

(3) If the reference in 7 U.S.C.A. § 499e (b) be a reference to procedural rights can, or should, the Pennsylvania Statute of Frauds be applied, assuming it is (a) procedural, or (b) substantive in character?

(4) If the reference in 7 U.S.C.A. § 499e(b) be a reference to substantive rights, can, or should, the Pennsylvania Statute of Frauds be applied, assuming it is (a) procedural, or (b) substantive in character?

Since the parties have not addressed themselves to the questions stated, we think it desirable, in the interests of fairness and as an aid to the Court, that the litigants have the opportunity to review them, and to submit their views in briefs and oral argu-

---

6. It has been held that a defense may be raised on appeal from a reparation order to the District Court though not raised in the proceedings before the Secretary. Fadler Co. v. Hesser, 10 Cir., 1948, 166 F.2d 904, 906.

7. See Footnote 3, supra, paragraph (1).

ment. To this end, we shall, *sua sponte,* order this case to be reargued, before the full Court. The questions stated are those which we desire the parties to include in their presentation, but are not in limitation of the scope of the reargument.

Judge O'CONNELL participated in the hearing and consideration of this case, but died before the instant conclusion was reached.